VIRGINIA L. WARDRUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wardrum v. Commissioner
Docket No. 7656-88
United States Tax Court
T.C. Memo 1990-121; 1990 Tax Ct. Memo LEXIS 121; 59 T.C.M. (CCH) 59; T.C.M. (RIA) 90121; March 8, 1990
Virginia L. Wardrum, pro se. Michael A. Urbanos, for the respondent. DINAN
*179 MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180, 181 and 182. [1]
Respondent determined deficiencies of $ 1,634 and $ 1,535 in petitioner's Federal income tax for the taxable years 1984 and 1985, respectively. The sole issue for decision is whether petitioner engaged in a horse raising/training/competition activity with a profit objective. This case was submitted to the Court fully stipulated under Rule 122. The stipulations of fact and attached exhibits are incorporated by this reference. Petitioner resided *123 in Topsham, Maine, at the time she filed her petition herein. During the period beginning 1979 up through the taxable years in issue (1984 and 1985) petitioner and her daughter, Merry Lynch, were involved in raising and training horses and using them in competition. During this period petitioner owned a total of six horses but never more than four at any given time. The following table shows the history of the horses petitioner owned during the period 1979 to 1985: *180 Name of Horse
Date Acquired
Cost
Date Sold
Sales Price
Zilch *
1978
$  25.00
1982
$   100.00
Sam ** 1978
850.00
1986
2,700.00
Honey Bars
1978
600.00
1978
600.00
Shauntaga ***
1980
500.00
1983
900.00
Shadow ****
1981
0  1982
30.00
Chocolate Chip
1981
360.00
1981
400.00
Sony *****
1982
0  --
--  *124 From 1979 to 1982 petitioner operated the horse raising and training enterprise at her Lubbock, Texas, residence which was referred to as Cottonwood Stables. Included on the property was a three stall barn with an adjoining tack/feed room, a 20 meter by 60 meter dressage arena, a small jump course and a separate turnout area for each horse. She purchased the property in 1978 after having been divorced. Petitioner's primary involvement in the activity included building and maintaining facilities, purchasing feed and supplies, transporting horses locally and interstate for competitions, daily horse care, and maintaining ledgers and records of the activity. This involved approximately 15 to 20 hours per week of petitioner's time. Petitioner consulted outside experts when setting up her horse raising activity. Petitioner was employed full time independent of her horse raising activity during the period 1979 to 1985 with a salary range of $ 24,655 in 1979 to $ 41,443 in 1985. Petitioner's daughter, Merry, was responsible for training the horses. This took approximately 20 hours of her time per week in the off season and 40 hours per week during the competition season. Petitioner *125 paid Merry a yearly salary of $ 1,900 and $ 992 for the taxable years 1984 and 1985, respectively, for her services of training the horses. Merry had extensive knowledge and experience on how to train horses. She was under the tutelage of many top trainers. It appears that the reason Merry worked so hard at her horse training was to make it to the Olympic equestrian team. Merry rode the horses in competition. During the period 1979 to 1985, Merry won over 300 ribbons and 30 first place trophies in competition. Merry was 12 years old in 1979. In 1982, Merry went to preparatory school in Charleston, South Carolina. While there she participated in competitions on the East Coast with her horse Sam. She resided with her father for the year. During 1983, petitioner changed employers and moved to San Antonio, Texas. When she moved she also moved her horses to a boarding facility which charged a flat rate for a stall or pasture space, hay and grain, and use of the facilities. The new boarding facility was at the training facility of the instructors Merry worked with from 1982 to 1984. It appears as that petitioner rented out her residence in Lubbock after she moved to San Antonio. *126 In 1984, Merry moved to Norman, Oklahoma, to attend the University of Oklahoma. She trained while there and took two of the horses, Sam and Sony, with her. In 1985, she withdrew from school to train full time for a competition to be held in August 1985. However, in May 1985, Sam became ill so Merry had to withdraw from the competition. She then went to Blanco, Texas, to train and work for the summer. She later left there to train at a different location. Petitioner incurred a loss every year from the activity for the period 1979 to 1985. For the taxable years 1984 and 1985 petitioner reported losses of $ 7,089 and $ 6,810, respectively. Petitioner reported little gross income from the activity for the years in issue. It is unclear whether petitioner reported any of the winnings from the competitions her daughter participated in. As for expenses, petitioner reported items such as: the salary paid to her daughter, advertising, car and truck expenses, dues, insurance, office expenses, rent, supplies, travel and entertainment, and veterinarian and furrier expenses. Respondent, in his statutory notice of deficiency, determined that petitioner did not operate the horse raising *127 breeding competition activity with a profit objective and therefore disallowed the losses petitioner deducted on her returns. The determination of respondent is presumed correct. Petitioner bears the burden of proving that respondent erred in his determination. Rule 142(a). Section 183(a) provides that if an activity "is not engaged in for profit" then no deduction attributable to such activity is allowed except as *181 provided for in that section. An "activity not engaged in for profit" is defined as an activity other than one with respect to which deductions are allowable under section 162 or under paragraphs (1) or (2) of section 212. Section 183(c). In other words, section 183 does not apply if petitioner's activity gives rise to deductions under section 162 or section 212(1) or (2). Deductions are permitted under those sections if an activity is commenced and continued with the "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. *128 Allen v. Commissioner, 72 T.C. 28, 33 (1979). Whether petitioner had an actual and honest profit objective is a question of fact to be resolved from all the relevant facts and circumstances. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors, which is a synthesis of prior case law, to be considered in determining whether an activity is engaged in for profit. Benz v. Commissioner, 63 T.C. 375, 382-383 (1974). These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial *129 status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Section 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). The facts and circumstances of the present case show that petitioner did not engage in the activity with a profit objective. Petitioner maintained records of the activity, sought advice from experts regarding the activity, and along with her daughter worked hard on the activity. However, the activity generated losses in every year petitioner engaged in it. It is difficult to determine just where petitioner thought that she could earn a profit from the activity. It does not appear that the horses or their colts would substantially appreciate in value or that petitioner's daughter would earn substantial sums in prize money in horse competitions. Furthermore, petitioner held a full-time, well-paying job independent of her horse raising activity. In addition, it is quite obvious to us after reviewing *130 the entire record that the overriding purpose of petitioner's involvement in this activity was to help her daughter become a first class equestrian. Her daughter spent considerable time and effort being trained by experts. It was her daughter who worked with petitioner's horses. Petitioner did not take other persons' horses to board or train. All efforts and expenses were incurred to improve her daughter's skills, not to earn a profit. When her daughter left home to go off to school or to train, the horses went with her. While this effort to make petitioner's daughter an Olympic class rider and hopefully an Olympian is a noble goal, it does not give rise to a profit objective. Accordingly, we uphold the determination of respondent that petitioner did not engage in the horse breeding/raising/competition activity with a profit objective. Decision will be entered for the respondent. Footnotes
1. All subsequent references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. This horse was a Shetland pony which was going to be made into dog food until petitioner bought it. ** This horse was purchased by petitioner's ex-husband and given to Merry as a birthday gift. *** This horse was a three year old half Arabian filly purchased to breed to another competition horse. **** This horse is the foal of Zilch. ***** This horse is the foal of Shauntaga and an imported Egyptian Arabian stallion.↩